## IN THE UNITED STATED DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY | CIVIL NO. 3:19-cv-01311 |
| *Plaintiff,* | |
| v. | DAMAGES, PRODUCT LIABILITY, NEGLIGENCE AND BREACH OF WARRANTIES |
| WEG ELECTRIC CORP., WEG TRANSFORMADORES MEXICO S.A. DE C.V., VOLTRAN S.A. DE C.V., CAMFER ENGINEERING SERVICES, INC. | |
| *Defendants.* | JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff, Continental Casualty Company, by and through its undersigned counsel, and for its Complaint against Defendants WEG Electric Corp., WEG Transformadores Mexico S.A. de C.V., Voltran S.A. de C.V., and CAMFER Engineering Services, Inc., and STATES, ALLEGS and PRAYS as follows:

1.      Plaintiff Continental Casualty Company (hereinafter "Plaintiff" or "CCC") is a corporation duly organized under the laws of the State of Illinois, dedicated to the business of fire, marine, equipment and casualty insurance and is authorized to do business in the Commonwealth of Puerto Rico.  Plaintiff's principal place of business is located at 333 South Wabash Avenue, Chicago, Illinois 60604.

2.      At all times material hereto, Plaintiff's insured was Popular, Inc. and Banco Popular de Puerto Rico (hereinafter collectively "Insured") and Plaintiff CCC insured property

and electrical service equipment located at the Insured's  El Senorial Center at Calle San Tomas, San Juan, Puerto Rico 00926 (hereinafter "the Property").

3.      Defendant WEG Electric Corp. is a Georgia corporation, with a principal place of business located at 6655 Sugarloaf Parkway, Duluth, Georgia 30097 (hereinafter "WEG USA").

4.      At all times material hereto, Defendant WEG USA was part of the "WEG Group".

5.      At all times material hereto, Defendant WEG USA was engaged in the business of designing, manufacturing, distributing selling, branding, marketing, advertising and/or supplying transformers and related electrical service equipment in the United States and Puerto Rico.

6.      Defendant WEG Transformadores Mexico S.A. de C.V. is a Mexican business entity, with its principal place of business located at Tula Km 3.5, Block 5, Fractionation Huechuetoca Industrial Park, Huetuetoca, Mexico 54680 (hereinafter "WEG Mexico").

7.      At all times material hereto, Defendant WEG Mexico was part of the "WEG Group".

8.      At all times material hereto, Defendant WEG Mexico was engaged in the business of designing, manufacturing, distributing selling, branding, marketing, advertising and/or supplying transformers and related electrical service equipment in the United States and Puerto Rico.

9.      Defendant Voltran S.A. de C.V. is a Mexican business entity, with its principal place of business located at Sur 2 No. 11, Zona Industrial, Tizayuca, Mexico 43805 (hereinafter "Voltran").

10.     At all times material hereto, Defendant Voltran was part of the "WEG Group".

11.     At all times material hereto, Defendant Voltran was engaged in the business of designing, manufacturing, distributing selling, branding, marketing, advertising and/or supplying transformers and related electrical service equipment in the United States and Puerto Rico.

12.     Defendants WEG USA, WEG Mexico and/or Voltran all operate as part of the "WEG Group".

13.     At all times material hereto, Defendant WEG USA and the WEG Group maintained offices, manufacturing facilities, distribution facilities, warehouses and/or business locations through the United States at the following locations:  (a) 1450 E. Francis Street, Unit A, Ontario, California 91761, (b) 18101 East Colfax Avenue, Aurora, Colorado 80011, (c) 6655 Sugarloaf Parkway, Duluth, Georgia 30097, (d) 4615 W. Prime Parkway, McHenry, Illinois 60050, (e) Crossroads Business Park, 12 Gateway Court, Suite A, Bolingbrook, Illinois 60440, (f) 410 East Spring Street, Bluffton, Indiana 46714, (g) 9601 Woodend Road, Suite A, Edwardsville, Kansas 66111, (h) 800 Central Avenue NE, Minneapolis, Minnesota 55413, (i) 1 Pauwels Drive, Washington, Missouri 61090, (j) 6349Avantha Drive, Washington, Missouri 63090, (k) 5439 Roan Road, Sylania, Ohio 43560, (k) 35 Dauphin Drive, New Kingstown, Pennsylvania 17072, and (l) 1517 Greens Road, Suite 200, Houston, Texas 77932, (m) 22434 76th Ave S., Kent, Washington 98032.

14.     Defendant CAMFER Engineering Services, Inc. is a Puerto Rican corporation with its principal place of business located at Calle America #4, San Juan, Puerto Rico 00917 (hereinafter "CAMFER").

15.     At all times material hereto, Defendant CAMFER was engaged in the business of selling and/or supplying transformers and related electrical service equipment in Puerto Rico.

## JURISDICTION AND VENUE

16.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. §1332(a)(1), as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

17.     The jurisdiction of this Court is also proper pursuant to 28 U.S.C. §1332(a)(2), as this action is between citizens of a State and citizens or subjects of a foreign state and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

18.     The jurisdiction of this Court is also proper pursuant to 28 U.S.C. §1332(a)(3), as this action is between citizens of different States and in which citizens or subjects of a foreign state are additional parties, and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

19.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2), as the events and omissions giving rise to the claims at issue occurred within this District and a substantial part of the property that is the subject of the action is situated in this District.

## FACT BACKGROUND

20.     Plaintiff incorporates the previous allegations, by reference.

21.     As a result of the passage of Hurricane Maria in September 2017, the Insured's transformer and electrical service equipment at its Property was damaged.

22.     In August 2018, Plaintiff's Insured purchased a new 2018 WEG Brand 38kV Three-Phase Oil Immersed Transformer (Serial No.: 1043181163 BPPR) from Defendant CAMFER (hereinafter "the Transformer").

23.     At all relevant times, Defendant CAMFER was a seller of the Transformer in the ordinary course of business, and the Transformer was the type of equipment that it sold and supplied as part of its ordinary business.

4

24.     In September 2018, the Transformer was installed at the Insured's Property by Defendant CAMFER.

25.     The Transformer was designed, manufactured, distributed, sold, branded, marketed, advertised and supplied by Defendants WEG USA, WEG Mexico and/or Voltran.

26.     The following photograph of the Transformer's side panel identifies it as a "WEG" Group product:



27.     The "WEG" mark used on the Transformer is a registered Trademark in the United States used and shared by Defendant WEG USA, WEG Mexico and Voltran for sale of their products in the United States and Puerto Rico.

28.     Defendants WEG USA, WEG Mexico and Voltran manufactured, assembled, designed, distributed, sold, shipped and marketed the subject Transformer under the trade name and/or brand name "WEG" and they are therefore liable as sellers and manufacturers of the product.

29.     At all relevant times, Defendants WEG USA, WEG Mexico and Voltran introduced the Transformer into the stream of commerce in the United States and Puerto Rico.

30.     At all relevant times, Defendant CAMFER facilitated the sale of the Transformer to the Insured in Puerto Rico and introduced the Transformer into the stream of commerce in Puerto Rico.

31.     At all relevant times, the Transformer was in substantially the same condition as when introduced into the stream of commerce by Defendants and no modifications were made to the Transformer from the time it left the possession of Defendants until the time it was installed in September 2018.

32.     On October 10, 2018, an electrical failure and fire event originated in the Transformer at the Property (hereinafter "the Fire").

33.     The Fire in the Transformer caused the Insured to incur property damages and other losses and expenses.

34.     Defendants WEG USA, WEG Mexico and Voltran sent their internal company engineers and/or company representatives to Puerto Rico after receiving notice of the Fire to inspect the Transformer in Puerto Rico and investigate the cause of the Fire in Puerto Rico.

35.     The Fire in the Transformer was caused by manufacturing and/or design defects.

36.     The Fire in the Transformer was caused by an internal malfunction and/or failure of windings, leads, connections and/or clearance tolerances of the Transformer.

37.     As a result of the Fire, and pursuant to the terms and conditions of the CCC policy of insurance issued to the Insured, Plaintiff CCC anticipates making payments to its insured in excess of $75,000, for the damages incurred as a result of the Fire.

38.     In accordance with the common law principles of equitable and legal subrogation, and pursuant to the policy of insurance, Plaintiff CCC is subrogated to the rights and remedies of the Insured to the extent of any payment made to the Insured.

<u>**COUNT 1**</u>
<u>**NEGLIGENCE v. WEG USA**</u>

39.     Plaintiff incorporates the previous allegations, by reference.

40.     Defendant had a duty to ensure that the Transformer was safely and properly designed, manufactured, distributed, sold, branded, marketed, advertised, supplied and placed in the stream of commerce in Puerto Rico without defects.

41.     Defendant breached its duties of care because the Transformed caused the Fire.

42.     The subject Fire and the resulting damages were caused by the negligence, carelessness, recklessness, gross negligence and/or negligent acts and/or omissions of Defendant WEG USA, its agents, servants and/or employees acting within the course and scope of their employment or agency, in:

> (a)     Negligently designing, manufacturing, distributing, selling, branding, marketing, advertising and/or supplying the Transformer in a defective condition;

> (b)     Negligently designing, manufacturing, distributing, selling, branding, marketing, advertising and/or supply the Transformer in an unreasonably dangerous condition;

> (c)     Placing the Transformer into the stream of commerce in the United States and Puerto Rico in a defectively manufactured and/or defectively designed condition which Defendant knew or should have known subjected the Property belonging to the Insured to an unreasonable risk of harm;

> (d)     Failing to adequately, properly, and safely assemble, construct, fabricate, manufacture, inspect and/or test the Transformer;

> (e)     Failing and omitting to do and perform those things necessary in order to avoid an unreasonable risk of harm to the Insured's property;

> (f)     Failing to warn customers, including the Insured, of the substantial risk of fire presented by the manufacture and/or design of the Transformer; and

(g)     Otherwise failing to use due care under the circumstances.

43.     As a direct and proximate result of the aforesaid negligence, carelessness, recklessness, gross negligence and/or negligent acts and/or omissions of Defendant WEG USA, the subject Fire occurred and resulted in Plaintiff and its Insured incurring property damages and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant WEG USA, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

## COUNT 2
## STRICT PRODUCTS LIABILITY v. WEG USA

44.     Plaintiff incorporates the previous allegations, by reference.

45.     At all times relevant hereto, Defendant WEG USA manufactured, designed, assembled, distributed, supplied, sold, branded, and marketed the Transformer.

46.     At all times relevant hereto, Defendant WEG USA placed the Transformed into the stream of commerce in Puerto Rico.

47.     The Transformer was expected to and did reach the consumer in Puerto Rico, the Insured, without substantial change and remained in substantially the same condition and without any material alterations from the time it was sold and until the date of the Fire.

48.     The Transformer was defective in manufacture and/or design in that it deviated in a material way from its manufacturing performance standards and/or deviated in a material way from otherwise identical units manufactured to the same design.

49.     The Transformer was defective in design and/or manufacture in that when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design

and manufacture and/or the design and manufacture was/were more dangerous than an ordinary consumer would expect when used in its intended and reasonably foreseeable manner.

50.     The Transformer was defective due to inadequate manufacturing, assembly, construction, fabrication and/or configuration of its windings and associated parts and insulation.

51.     Defendant WEG USA is strictly liable for causing the Fire and resulting damages from the Fire.

52.     As a direct and proximate cause of the defective and unreasonably dangerous condition of the Transformer, the Fire occurred causing Plaintiff and the Insured to incur damages to property and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant WEG USA, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

### COUNT 3
### BREACH OF EXPRESS AND IMPLIED WARRANTIES v. WEG USA

53.     Plaintiff incorporates the previous allegations, by reference.

54.     In designing, manufacturing, assembling, distributing, selling, supplying, branding, marketing, advertising and/or placing into the stream of commerce the Transformer, Defendant expressly and/or impliedly warranted that the Transformer was fit for the particular and ordinary purpose for which it was intended.

55.     The Transformer was not fit for the particular and ordinary purpose for which it was intended because it failed and caused the Fire within a month of its operation.

56.     In designing, manufacturing, assembling, distributing, selling, supplying, branding, marketing, advertising and/or placing into the stream of commerce the Transformer,

Defendant expressly and impliedly warranted that the Transformer was of good and merchantable quality.

57.     The Transformer was not of good and merchantable quality because it failed and caused the Fire within a month of its operation.

58.     By designing, manufacturing, assembling, distributing, selling, supplying, branding, and/or placing into the Transformer into the stream of commerce in a defective and unreasonably dangerous condition, Defendant breached its express and implied warranties.

59.     As a direct and proximate result of the above referenced breaches of warranties, the subject Fire occurred and caused Plaintiff and its Insured to incur property damages and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant WEG USA, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

## COUNT 4
## NEGLIGENCE v. WEG MEXICO

60.     Plaintiff incorporates the previous allegations, by reference.

61.     Defendant had a duty to ensure that the Transformer was safely and properly designed, manufactured, distributed, sold, branded, marketed, advertised, supplied and placed in the stream of commerce in Puerto Rico without defects.

62.     Defendant breached its duties of care because the Transformed caused the Fire.

63.     The subject Fire and the resulting damages were caused by the negligence, carelessness, recklessness, gross negligence and/or negligent acts and/or omissions of Defendant WEG Mexico, its agents, servants and/or employees acting within the course and scope of their employment or agency, in:

(a)     Negligently designing, manufacturing, distributing, selling, branding, marketing, advertising and/or supplying the Transformer in a defective condition;

(b)     Negligently designing, manufacturing, distributing, selling, branding, marketing, advertising and/or supply the Transformer in an unreasonably dangerous condition;

(c)     Placing the Transformer into the stream of commerce in the United States and Puerto Rico in a defectively manufactured and/or defectively designed condition which Defendant knew or should have known subjected the Property belonging to the Insured to an unreasonable risk of harm;

(d)     Failing to adequately, properly, and safely assemble, construct, fabricate, manufacture, inspect and/or test the Transformer;

(e)     Failing and omitting to do and perform those things necessary in order to avoid an unreasonable risk of harm to the Insured's property;

(f)     Failing to warn customers, including the Insured, of the substantial risk of fire presented by the manufacture and/or design of the Transformer; and

(g)     Otherwise failing to use due care under the circumstances.

64.     As a direct and proximate result of the aforesaid negligence, carelessness, recklessness, gross negligence and/or negligent acts and/or omissions of Defendant WEG Mexico, the subject Fire occurred and resulted in Plaintiff and its Insured incurring property damages and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant WEG Mexico, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

## COUNT 5
## STRICT PRODUCTS LIABILITY v. WEG MEXICO

65.     Plaintiff incorporates the previous allegations, by reference.

66.     At all times relevant hereto, Defendant WEG Mexico manufactured, designed, assembled, distributed, supplied, sold, branded, and marketed the Transformer.

67.     At all times relevant hereto, Defendant WEG Mexico placed the Transformed into the stream of commerce in Puerto Rico.

68.     The Transformer was expected to and did reach the consumer in Puerto Rico, the Insured, without substantial change and remained in substantially the same condition and without any material alterations from the time it was sold and until the date of the Fire.

69.     The Transformer was defective in manufacture and/or design in that it deviated in a material way from its manufacturing performance standards and/or deviated in a material way from otherwise identical units manufactured to the same design.

70.     The Transformer was defective in design and/or manufacture in that when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design and manufacture and/or the design and manufacture was/were more dangerous than an ordinary consumer would expect when used in its intended and reasonably foreseeable manner.

71.     The Transformer was defective due to inadequate manufacturing, assembly, construction, fabrication and/or configuration of its windings and associated parts and insulation.

72.     Defendant WEG Mexico is strictly liable for causing the Fire and resulting damages from the Fire.

73.     As a direct and proximate cause of the defective and unreasonably dangerous condition of the Transformer, the Fire occurred causing Plaintiff and the Insured to incur damages to property and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant WEG Mexico, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

## COUNT 6
## BREACH OF EXPRESS AND IMPLIED WARRANTIES v. WEG MEXICO

74.     Plaintiff incorporates the previous allegations, by reference.

75.     In designing, manufacturing, assembling, distributing, selling, supplying, branding, marketing, advertising and/or placing into the stream of commerce the Transformer, Defendant expressly and/or impliedly warranted that the Transformer was fit for the particular and ordinary purpose for which it was intended.

76.     The Transformer was not fit for the particular and ordinary purpose for which it was intended because it failed and caused the Fire within a month of its operation.

77.     In designing, manufacturing, assembling, distributing, selling, supplying, branding, marketing, advertising and/or placing into the stream of commerce the Transformer, Defendant expressly and impliedly warranted that the Transformer was of good and merchantable quality.

78.     The Transformer was not of good and merchantable quality because it failed and caused the Fire within a month of its operation.

79.     By designing, manufacturing, assembling, distributing, selling, supplying branding, and/or placing into the Transformer into the stream of commerce in a defective and unreasonably dangerous condition, Defendant breached its express and implied warranties.

80.     As a direct and proximate result of the above referenced breaches of warranties, the subject Fire occurred and caused Plaintiff and its Insured to incur property damages and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant WEG Mexico, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

## COUNT 7
## NEGLIGENCE v. VOLTRAN

81.     Plaintiff incorporates the previous allegations, by reference.

82.     Defendant had a duty to ensure that the Transformer was safely and properly designed, manufactured, distributed, sold, branded, marketed, advertised, supplied and placed in the stream of commerce in Puerto Rico without defects.

83.     Defendant breached its duties of care because the Transformed caused the Fire.

84.     The subject Fire and the resulting damages were caused by the negligence, carelessness, recklessness, gross negligence and/or negligent acts and/or omissions of Defendant Voltran, its agents, servants and/or employees acting within the course and scope of their employment or agency, in:

     (a)     Negligently designing, manufacturing, distributing, selling, branding, marketing, advertising and/or supplying the Transformer in a defective condition;

     (b)     Negligently designing, manufacturing, distributing, selling, branding, marketing, advertising and/or supply the Transformer in an unreasonably dangerous condition;

     (c)     Placing the Transformer into the stream of commerce in the United States and Puerto Rico in a defectively manufactured and/or defectively designed condition which Defendant knew or should have known subjected the Property belonging to the Insured to an unreasonable risk of harm;

     (d)     Failing to adequately, properly, and safely assemble, construct, fabricate, manufacture, inspect and/or test the Transformer;

     (e)     Failing and omitting to do and perform those things necessary in order to avoid an unreasonable risk of harm to the Insured's property;

     (f)     Failing to warn customers, including the Insured, of the substantial risk of fire presented by the manufacture and/or design of the Transformer; and

     (g)     Otherwise failing to use due care under the circumstances.

85.     As a direct and proximate result of the aforesaid negligence, carelessness, recklessness, gross negligence and/or negligent acts and/or omissions of Defendant Voltran, the subject Fire occurred and resulted in Plaintiff and its Insured incurring property damages and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant Voltran, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

## COUNT 8
## STRICT PRODUCTS LIABILITY v. VOLTRAN

86.     Plaintiff incorporates the previous allegations, by reference.

87.     At all times relevant hereto, Defendant Voltran manufactured, designed, assembled, distributed, supplied, sold, branded, and marketed the Transformer.

88.     At all times relevant hereto, Defendant Voltran placed the Transformed into the stream of commerce in Puerto Rico.

89.     The Transformer was expected to and did reach the consumer in Puerto Rico, the Insured, without substantial change and remained in substantially the same condition and without any material alterations from the time it was sold and until the date of the Fire.

90.     The Transformer was defective in manufacture and/or design in that it deviated in a material way from its manufacturing performance standards and/or deviated in a material way from otherwise identical units manufactured to the same design.

91.     The Transformer was defective in design and/or manufacture in that when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design and manufacture and/or the design and manufacture was/were more dangerous than an ordinary consumer would expect when used in its intended and reasonably foreseeable manner.

92.     The Transformer was defective due to inadequate manufacturing, assembly, construction, fabrication and/or configuration of its windings and associated parts and insulation.

93.     Defendant Voltran is strictly liable for causing the Fire and resulting damages from the Fire.

94.     As a direct and proximate cause of the defective and unreasonably dangerous condition of the Transformer, the Fire occurred causing Plaintiff and the Insured to incur damages to property and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant Voltran, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

## COUNT 9
## BREACH OF EXPRESS AND IMPLIED WARRANTIES v. VOLTRAN

95.     Plaintiff incorporates the previous allegations, by reference.

96.     In designing, manufacturing, assembling, distributing, selling, supplying, branding, marketing, advertising and/or placing into the stream of commerce the Transformer, Defendant expressly and/or impliedly warranted that the Transformer was fit for the particular and ordinary purpose for which it was intended.

97.     The Transformer was not fit for the particular and ordinary purpose for which it was intended because it failed and caused the Fire within a month of its operation.

98.     In designing, manufacturing, assembling, distributing, selling, supplying, branding, marketing, advertising and/or placing into the stream of commerce the Transformer, Defendant expressly and impliedly warranted that the Transformer was of good and merchantable quality.

99.     The Transformer was not of good and merchantable quality because it failed and caused the Fire within a month of its operation.

100.    By designing, manufacturing, assembling, distributing, selling, supplying branding, and/or placing into the Transformer into the stream of commerce in a defective and unreasonably dangerous condition, Defendant breached its express and implied warranties.

101.    As a direct and proximate result of the above referenced breaches of warranties, the subject Fire occurred and caused Plaintiff and its Insured to incur property damages and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant Voltran, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

## COUNT 10
## NEGLIGENCE v. CAMFER

102.    Plaintiff incorporates the previous allegations, by reference.

103.    Defendant had a duty to ensure that the Transformer was safely and properly distributed, sold, supplied and placed in the stream of commerce in Puerto Rico without defects.

104.    Defendant breached its duties of care because the Transformed caused the Fire.

105.    The subject Fire and the resulting damages were caused by the negligence, carelessness, recklessness, gross negligence and/or negligent acts and/or omissions of Defendant CAMFER, its agents, servants and/or employees acting within the course and scope of their employment or agency, in:

    (a)    Negligently designing, manufacturing, distributing, selling, branding, marketing, advertising and/or supplying the Transformer in a defective condition;

    (b)    Negligently designing, manufacturing, distributing, selling, branding, marketing, advertising and/or supply the Transformer in an unreasonably dangerous condition;

(c)     Placing the Transformer into the stream of commerce in the United States and Puerto Rico in a defectively manufactured and/or defectively designed condition which Defendant knew or should have known subjected the Property belonging to the Insured to an unreasonable risk of harm;

(d)     Failing to adequately, properly, and safely assemble, construct, fabricate, manufacture, inspect and/or test the Transformer;

(e)     Failing and omitting to do and perform those things necessary in order to avoid an unreasonable risk of harm to the Insured's property;

(f)     Failing to warn customers, including the Insured, of the substantial risk of fire presented by the manufacture and/or design of the Transformer; and

(g)     Otherwise failing to use due care under the circumstances.

106.    As a direct and proximate result of the aforesaid negligence, carelessness, recklessness, gross negligence and/or negligent acts and/or omissions of Defendant CAMFER, the subject Fire occurred and resulted in Plaintiff and its Insured incurring property damages and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant CAMFER, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

## COUNT 11
## STRICT PRODUCTS LIABILITY v. CAMFER

107.    Plaintiff incorporates the previous allegations, by reference.

108.    At all times relevant hereto, Defendant CAMFER manufactured, designed, assembled, distributed, supplied, sold, branded, and marketed the Transformer.

109.    At all times relevant hereto, Defendant CAMFER placed the Transformed into the stream of commerce in Puerto Rico.

110.    The Transformer was expected to and did reach the consumer in Puerto Rico, the Insured, without substantial change and remained in substantially the same condition and without any material alterations from the time it was sold and until the date of the Fire.

111.    The Transformer was defective in manufacture and/or design in that it deviated in a material way from its manufacturing performance standards and/or deviated in a material way from otherwise identical units manufactured to the same design.

112.    The Transformer was defective in design and/or manufacture in that when it left the hands of Defendant, the foreseeable risks exceeded the benefits associated with the design and manufacture and/or the design and manufacture was/were more dangerous than an ordinary consumer would expect when used in its intended and reasonably foreseeable manner.

113.    The Transformer was defective due to inadequate manufacturing, assembly, construction, fabrication and/or configuration of its windings and associated parts and insulation.

114.    Defendant CAMFER is strictly liable for causing the Fire and resulting damages from the Fire.

115.    As a direct and proximate cause of the defective and unreasonably dangerous condition of the Transformer, the Fire occurred causing Plaintiff and the Insured to incur damages to property and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant CAMFER, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

### COUNT 12
### BREACH OF EXPRESS AND IMPLIED WARRANTIES v. WEG CAMFER

116.    Plaintiff incorporates the previous allegations, by reference.

117.    In distributing, selling, supplying, and/or placing into the stream of commerce the Transformer, Defendant expressly and/or impliedly warranted that the Transformer was fit for the particular and ordinary purpose for which it was intended.

118.    The Transformer was not fit for the particular and ordinary purpose for which it was intended because it failed and caused the Fire within a month of its operation.

119.    In distributing, selling, supplying, and/or placing into the stream of commerce the Transformer, Defendant expressly and impliedly warranted that the Transformer was of good and merchantable quality.

120.    The Transformer was not of good and merchantable quality because it failed and caused the Fire within a month of its operation.

121.    By distributing, selling, supplying, and/or placing into the Transformer into the stream of commerce in a defective and unreasonably dangerous condition, Defendant breached its express and implied warranties.

122.    As a direct and proximate result of the above referenced breaches of warranties, the subject Fire occurred and caused Plaintiff and its Insured to incur property damages and other losses and expenses.

WHEREFORE, Plaintiff CCC demands judgment in its favor and against Defendant CAMFER, in an amount in excess of $75,000, together with interest and costs and such other relief as this Court deems proper.

**RESPECTFULLY SUBMITTED.**

In Miami, Florida, this 4th day of April 2019.

**WE HEREBY CERTIFY:** that on this date, we electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system.

/s/ Joseph F. Rich
Joseph F. Rich, Esquire
COZEN O'CONNOR
USDC-PR No. 231602
200 South Biscayne Blvd., Suite 3000
Miami, Florida 33130
(T) 786-871-3941
(F) 786-220-0204
Primary E-Mail: jrich@cozen.com

*Attorneys for Plaintiff, Continental Casualty Company*

CO-COUNSEL:
EDGE Legal Strategies, P.S.C.
EYCK O. LUGO, ESQ.
USDN 216708
252 Ponce de León Ave.
Citibank Tower, Suite 1200
San Juan, Puerto Rico 00918
Tel. (787) 522-2000
Fax (787)522-2010
E-mail: elugo@edgelegalpr.com

*Attorneys for Plaintiff, Continental Casualty Company*

LEGAL\40608745\1